**PALM SPRINGS DODGE, INC.,
Plaintiff/Counterdefendant,**

v.

**CHRYSLER CREDIT CORPORATION,
Defendant/Counterplaintiff.**

**No. 79-2503-CIV-EPS.**

United States District Court,
S. D. Florida,
Miami Division.

March 23, 1982.

---

2. Wright, *Federal Courts*, 3rd Ed., § 76 at 375.

Roberto Martinez, Floyd, Pearson, Stewart, Richman, Greer & Weil, P. A., Miami, Fla., for plaintiff/counterdefendant.

John T. Kolinski, Shutts & Bowen, Miami, Fla., for defendant/counterplaintiff.

## ORDER AND MEMORANDUM OPINION

SPELLMAN, District Judge.

THIS CAUSE came before the Court upon the Defendant's Motion for Summary Judgment. Having reviewed the record in this cause and being otherwise duly advised, the court finds that,

Palm Springs Dodge brought this action under the "Automobile Dealers' Day in Court Act", 15 U.S.C. §§ 1221 *et seq.* 15 U.S.C. § 1222 allows a dealer to sue a manufacturer for failure to act in good faith in performing or complying with the franchise terms. § 1221(a) defines "automobile manufacturer" as "any person . . . engaged in the manufacturing or assembling of passenger cars, . . . including any person which acts for and is *under the control of* such manufacturer or assembler in connection with the distribution of said automotive vehicles." [emphasis added]

The Defendant, Chrysler Credit Corporation (Credit), has moved for Summary Judgment on the grounds that it is not an "automobile manufacturer" within the meaning of the Act; nor was it a party to the franchise agreement between Palm Springs Dodge and Chrysler Corporation, a prerequisite to suing under the Act.

In the leading fifth circuit case, *York Chrysler-Plymouth Inc. v. Chrysler Credit Corp.*, 447 F.2d 786, 789 (1971), the jury returned a verdict against Chrysler Corp. and Chrysler Motors under the Dealers Day in Court Act. On appeal, the roles of the two entities were defined as follows:

> Chrysler Corp. manufactures the automobiles but sells them only to Chrysler Motors Corp., its wholly-owned sales subsidiary. Chrysler Motors has sole responsibility for distribution and marketing of Chrysler products, and it is this corporation alone which enters into franchise contracts with automobile dealerships.[1]

The Court found both Defendants qualified as "automobile manufacturers" under the Act; Chrysler Motors because it was a "corporation which acts for and is under the control of such manufacturer or assembler [Chrysler Corp.] in connection with the distribution of said automotive vehicles."[2]

In *Joe Westbrook, Inc. v. Chrysler Corp.*, 419 F.Supp. 824 (N.D.Ga.1976), the court held that an entity not a party to a franchise agreement would not come within its

---

1. 447 F.2d 786, 789 (5th Cir. 1971) at 791.

2. Id., citing 15 U.S.C. § 1221(a).

jurisdiction under § 1222 even if said entity qualified as an automobile manufacturer.[3] Upon argument by the Plaintiff that Chrysler Realty acted as agent of Chrysler Corp. and should therefore not be allowed to escape the mandate of the Act, the Court held:

> the fact that a parent-subsidiary relationship exists between the Chrysler Corp. and Chrysler Realty is not dispositive of the agency issue in this situation ... Plaintiffs have made no showing which would make Chrysler Realty responsible for the [acts of] Chrysler Corp. The facts indicate that Chrysler Realty and Chrysler Corp. are separate legal entities each operating in its own sphere. Accordingly, Chrysler Realty, not having been a party to the franchise agreement or responsible under an agency theory for the termination of that agreement, cannot be held accountable, under the ADDCA, for [Chrysler Corp.'s acts].[4]

Citing *York, supra,* the 9th circuit has held that "[a] manufacturer may be liable notwithstanding it is not a party to the franchise if the party contracting with the dealer is the manufacturer's agent or merely a 'straw man' erected to insulate it from statutory liability." *Marquis v. Chrysler Corp.,* 577 F.2d 624, 630 (9th Cir. 1978). Finding no evidence that Chrysler Motors was Chrysler Corp.'s agent in dealing with the Plaintiff, the Court reversed a jury verdict against Chrysler Corp. under the act.

*Colonial Ford, Inc. v. Ford Motor Co.,* 577 F.2d 106 (10th Cir. 1978), involved a factual situation similar to the case under consideration here. Ford Motor Credit, a wholly-owned subsidiary of Ford Motor Co., was in the business of financing the distribution of Fords by providing dealers with capital. The complaint was based on Credit's conduct in providing Plaintiff's financing. The issue before the Court was whether Credit came within the Act's definition of automobile manufacturer. The trial court had submitted that question to the jury with an instruction that control depended on specific overt acts in the actual transactions with Colonial.

The appellate court held that the Act was not facially applicable to Credit since it was not itself a manufacturer and it had no franchise agreement with the Plaintiff. It went on to say, however, that the Act also includes entities acting for and under the control of a manufacturer, an issue dependent upon the facts and circumstances of the particular transaction, of which the wholly-owned subsidiary aspect is a factor but not absolutely determinative.[5]

On motion for rehearing, Colonial averred the jury should have been instructed that a wholly-owned subsidiary acting for the manufacturer in connection with distribution of vehicles is subject to the act as a matter of law. *Colonial Ford, Inc. v. Ford Motor Co.,* 592 F.2d 1126 (10th Cir. 1979), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48. The Court agreed, finding Credit's involvement with Colonial "was exclusively for the purpose of facilitating the distribution of automobiles manufactured by its parent."[6] However, the Court noted that "[a] jury question may be presented if the requisite element of control is alleged on a basis other than corporate parental ownership."[7]

The reasoning underlying the court's decision was based on its interpretation of the Act's purpose:

> The Act is designed to curtail the kinds of coercion and intimidation of retail dealers by manufacturers made possible by the parties' relative economic inequality. [citations omitted] The most obvious point of leverage in the manufacturer-dealer relationship is financing. When, as in this case, a manufacturer uses a wholly owned subsidiary to facilitate that financing, it brings the subsidiary within

---

**3.** 419 F.Supp. 824 (N.D.Ga.1976) at 831.

**4.** Id. at 832.

**5.** 577 F.2d 106 (19th Cir. 1978) at 108–109.

**6.** 592 F.2d 1126 (10th Ar. 1979) at 1129.

**7.** Id. at N.3.

the remedial purposes of the Act whether or not it is shown that the manufacturer ordered the specific conduct complained of. It would be unrealistic to suppose that a wholly owned subsidiary working to facilitate the parent's distributive activities would act other than to promote the desires of its parent. Thus the Act's "control" requirement is satisfied by showing corporate ownership and confluence of interest.[8]

 The Defendant before this Court submits that we should not follow the holding in *Colonial* on the ground that it erroneously usurps the legislative function by eliminating the Act's definitional requirement of establishing control. According to Defendant, if a Plaintiff establishes that a wholly-owned subsidiary acts for a manufacturer, the holding in *Colonial* requires an automatic finding of control. We agree with Defendant's contention and find that a material issue of fact exists as to whether Chrysler Credit Corporation was "under the control of" Chrysler Corp. and susceptible of liability under 15 U.S.C. §§ 1221 *et seq.* The Defendant's Motion for Summary Judgment is hereby denied as to Count I of the Complaint. Plaintiff will be given the opportunity to show that Chrysler Credit Corporation was an agent of, and under the control of Chrysler Corp. when Chrysler Credit made the threats alleged by Plaintiff in the Complaint.

 Defendant has also moved for Summary Judgment on the pending state claims under Florida Statutes §§ 545.03 and .04. The Court has found no cases which interpret this chapter, however a plain and logical reading of the sections indicate that they are directed at the automobile manufacturer, i.e. even though § 545.04 refers to threats made by finance companies the elements outlined in the section constitute prima facie evidence of a violation by the manufacturer, not the finance company. Therefore, the Court grants the Defendant's Motion for Summary Judgment as to Count II of the Complaint, finding that

Florida Statutes §§ 545.03 and .04 are not applicable to the Defendant Chrysler Credit Corporation.

It is hereby,

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment as to Count I of the Complaint is denied and Defendant's Motion for Summary Judgment as to Count II of the Complaint is granted.

---

8. Id. at 1129. The Court cited *York Chrysler-Plymouth Inc. v. Chrysler Credit Corp.*, 447 F.2d 789 (5th Cir. 1971) in support of its position.