**SALEM MALL LINCOLN MERCURY, INC., et al., Plaintiffs,**

v.

**HYUNDAI MOTOR AMERICA, Defendant.**

**No. C–3–95–231.**

United States District Court, S.D. Ohio, Western Division.

March 14, 2000.

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT (DOC. # 102), TREATED AS A MOTION FOR SUMMARY JUDGMENT

RICE, Chief Judge.

The events giving rise to this litigation are well known to counsel and the Court; therefore, an extensive discussion of those events is not necessary.[1] For present purposes, it is sufficient to note that Plaintiff Salem Mall Lincoln Mercury, Inc. ("SMLM"), formerly operated an automobile dealership at which it sold vehicles manufactured by the Defendant. The relationship between SMLM and the Defendant was governed by a Dealer Agreement under date of July 18, 1991. On March 9, 1992, Defendant sent SMLM a notice indicating that it intended to terminate the Dealer Agreement, effective June 18, 1992.[2] SMLM received that notice on March 19, 1992. This litigation was filed on May 1, 1995, in the Court of Common Pleas for Montgomery County, Ohio, from whence the Defendant removed it in timely fashion. *See* Doc. # 1.

This case is now before the Court on the Defendant's Motion for Judgment on the Pleadings or for Summary Judgment (Doc. # 102). Since the Defendant has supported its motion with an affidavit and SMLM has opposed it with the same affidavit, this Court will treat that motion strictly as one for summary judgment. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable

James H. Greer, David C. Greer, Dwight D. Brannon, Bieser Greer, Dayton, OH, for Plaintiffs.

Timothy C. Sullivan, Adam Bloomstein, Tuscaloosa, AL, for Defendant.

1. The following recitation of events is taken from SMLM's Complaint, as well as from an affidavit of Plaintiff Mark Stevens, which has been filed by both Defendant and SMLM.

2. In accordance with Ohio law, the Defendant was required to notify SMLM 90 days before the termination of the Dealer Agreement would become effective. Ohio Rev.Code § 4517.54(B).

opportunity to present all material made pertinent to such a motion by Rule 56.").[3] Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. #102–1) is overruled. As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories; and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present

evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because

---

**3.** Given that the parties have submitted the identical affidavit to support and to oppose Defendant's motion, they have been given a reasonable opportunity to present pertinent materials.

they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the non-moving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Defendant argues that it is entitled to summary judgment on SMLM's claims under the Ohio Motor Vehicle Dealers Act ("OMVDA"), Ohio Revised Code §§ 4517.49–4517.65, and the Federal Automobile Dealers Day in Court Act ("FADDCA"), 15 U.S.C. § 1221, *et seq.* The Defendant has not moved for summary judgment on SMLM's common law breach of contract claim. The Defendant contends that SMLM's two statutory claims are barred by the applicable statutes of limitations.[4] As a means of analysis, the Court will initially address the parties' arguments concerning the Ohio legislation, following which it will turn to their contentions pertaining to the federal statute.

## A. OMVDA

Under that statute, a manufacturer is required to notify an automobile dealer that its dealership will be terminated, 90

---

4. The Defendant also argues that SMLM has not set forth a claim under the FADDCA in its Complaint. As the Defendant points out, that statute is not mentioned in this pleading. In its Decision of August 18, 1995 (Doc. # 95), this Court also addressed the Plaintiffs' failure to mention the federal statute in their Complaint. Therein, the Court overruled upon Plaintiffs' Motion for Reconsideration, in which the Plaintiffs argued, *inter alia,* that this Court misconstrued the Second Count in their Complaint when it sustained the Defendant's Motion for Summary Judgment. In particular, the Plaintiffs asserted that Count Two, with which the Plaintiffs had set forth claims on behalf of Mark and Patsy Stevens, contained a claim under the FADDCA, which this Court had failed to recognize. The Court declined to reconsider its ruling, because that statute was not mentioned in the Plaintiffs' Complaint and they had failed to argue that Count Two contained a claim under the federal statute, in response to Defendant's request for summary judgment on that Count. In addition, the Court overruled Plaintiffs' alternative request for leave to amend, since Mark and Patsy Stevens were without standing to prosecute a claim under the FADDCA. It cannot be questioned that SMLM would have standing to bring a claim under that statute. Therefore, rather than requiring SMLM to file a motion requesting leave to amend, this Court assumes, for present purposes, that SMLM has set forth a claim under the FADDCA against Defendant and addresses the parties' arguments as to whether that claim is barred by the applicable statute of limitations.

days before the effective date of the termination. Ohio Rev.Code § 4517.54(B). The OMVDA provides alternative remedies to an automobile dealership which believes that its franchise has been improperly terminated. *First*, it may, within the 90–day period between the receipt of notice and the effective date of the termination, file a protest with Ohio Motor Vehicle Dealer Board ("Board"). Ohio Rev.Code § 4517.54(C). *Second*, a terminated dealer may file a civil action, in which it may recover double damages and court costs, including attorney's fees. Ohio Rev.Code § 4517.65(A) and (B). The OMVDA does not expressly state which statute of limitations is applicable to such a civil action. Herein, SMLM has followed the second alternative.

The Defendant argues that SMLM's claim under the OMVDA is barred by the statute of limitations, because the dealer was required to file this litigation within 90 days of the receipt of the notice of termination. According to Defendant, the 90–day limitation for initiating an administrative proceedings (i.e., filing a protest with the Board), as contained in § 4517.54(C), also applies to lawsuits brought pursuant to § 4517.65(A) and (B). Since proceeding before an administrative agency and filing a lawsuit are alternative remedies provided by the OMVDA, Defendant's argument continues, the same statute of limitations must apply to each alternative. Although this Court agrees that the Ohio statute provides a terminated dealer with the choice of seeking redress in either an administrative or a judicial forum, this Court does not agree that a judicial action must

be initiated within 90 days of the receipt of notice that a franchise will be terminated.[5]

■ As is indicated, § 4517.65 does not expressly state which statute of limitations is applicable to actions filed thereunder. However, the Ohio General Assembly has provided a statute of limitations for actions, such as the instant claim, where the liability was created by a statute. *See* Ohio Revised Code § 2305.07 (six year statute of limitations for liability created by a statute). Moreover, the Ohio Supreme Court has addressed and has rejected the argument that the time for filing an administrative charge of discrimination supplies the applicable statute of limitations in cases involving claims employment discrimination. In *Morris v. Kaiser Engineers, Inc.*, 14 Ohio St.3d 45, 471 N.E.2d 471 (1984), the Ohio Supreme Court addressed the question of what statute of limitations governed actions under former § 4101.17, which provided a private right of action to victims of age discrimination. The *Morris* held that § 2305.07 governed such an action, rather than the shorter period for initiating the administrative process by filing charge of discrimination, as contained in Chapter 4112 of the Ohio Revised Code. In *Cosgrove v. Williamsburg of Cincinnati*, 70 Ohio St.3d 281, 638 N.E.2d 991 (1994), the Ohio Supreme Court concluded that § 2305.07 governed actions for employment discrimination under § 4112.99, notwithstanding the shorter temporal limitations for initiating administrative proceedings contained in Chapter 4112. As with the OMVDA, the Ohio employment discrimination statutes provided an aggrieved party with alternative reme-

---

5. In support of its contention that the 90–day notice period provides the statute of limitations for actions under § 4517.65, the Defendant has cited *Joseph Imports, Inc. v. Mitsubishi Motor Sales of America, Inc.*, 1996 U.S. Dist. Lexis 21957 (S.D.Ohio 1996). Therein, Judge Sandra Beckwith concluded that the plaintiff could not maintain an action for double damages under § 4517,65, because he had previously prosecuted a protest action before the Board. Although that decision supports this Court's statement that alternative fora are

available to the terminated dealer, Judge Beckwith did not in any manner discuss the issue of the applicable statute of limitations for actions under § 4517.65. In addition, the Defendant has cited a New York statute, N.Y. Veh. & Traf. Law § 463(2)(e). Since that statute expressly provides that a terminated dealer must file a lawsuit within 120 days, it does not support the Defendant's position that an action under § 4517.65 must be initiated within 90 days.

dies, to wit: either initiate administrative proceedings or file a lawsuit. In *Morris* and *Cosgrove*, the Ohio Supreme Court rejected the position that the temporal limitations for pursuing the administrative route were applicable, when a plaintiff chose the alternative remedy of filing a suit in court. The Defendant has cited no Ohio authority in support of the proposition that when a statute provides alternative administrative and judicial remedies, the period for initiating administrative proceedings supplies the statute of limitations for a lawsuit. Based upon *Morris* and *Cosgrove*, this Court concludes that the Ohio Supreme Court, if faced with the question, would reject the argument that an action under § 4517.65 is governed by the 90–day period in which an administrative proceeding must be initiated; rather, that court would conclude that § 2305.07, which provides a six-year statute of limitations for a liability created by a statute, is the applicable statute of limitations for such an action.[6] Since this litigation was initiated within six years of the termination of the Dealership Agreement by the Defendant, it was timely filed.

Accordingly, the Court overrules the Defendant's Motion for Judgment on the Pleadings or for Summary Judgment (Doc. # 102), treated solely as a motion for summary judgment, to the extent that, with that motion, it seeks summary judgment on SMLM's claim under the OMVDA.

### B.  FADDCA

An action under the FADDCA "shall be forever barred unless commenced within three years after the cause of action shall have accrued." 15 U.S.C. § 1223. Herein, it is unquestioned that SMLM initiated this litigation more than three years after it had received notice from the Defendant that the dealership was terminated, effective June 18, 1992. However, SMLM filed its Complaint on May 1, 1995, less than three years after the effective date of that termination. Thus, the Defendant's stat-

ute of limitations defense raises only the issue of when SMLM's claim under the FADDCA accrued, so as to trigger the applicable three-year statute of limitations. In particular, this Court must decide whether accrual occurred on March 19, 1992, when SMLM received the notice of the termination dated March 9th of that year, or when that termination became effective. Not surprisingly, the Defendant argues that SMLM's claim accrued on the date upon which it received notice that the dealership would be terminated, while SMLM takes the position that the date on which termination became effective is controlling.

■   This Court starts with the familiar proposition that a claim under federal law accrues and that, therefore, the statute of limitations begins to run, when the plaintiff knows or has reason to know that the act providing the basis for its injury has occurred. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.1996), *cert. denied*, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997). *See also Mounts v. Grand Trunk Western Railroad*, 198 F.3d 578, 582 n. 3 (6th Cir.2000) (collecting cases in which the above rule has been applied to numerous federal causes of action). Thus, this Court must decide whether Defendant's notice to SMLM that its dealership would be terminated, effective June 18, 1992, was the act providing the basis for its injury.

Only one reported decision has discussed the question of the date upon which a claim under the FADDCA accrues when an automobile dealer receives notice that its dealership will be terminated at a date in the future. In *Marquis v. Chrysler Corp.*, 577 F.2d 624 (9th cir.1978), the plaintiff was informed on January 5, 1968, that his dealership would be terminated, effective April 4, 1968. The plaintiff brought suit on April 2, 1971. The Ninth Circuit rejected the argument that a claim under the federal statute accrued upon receipt of such a notice, holding instead

---

**6.**  Research has failed to locate a single Ohio decision addressing the issue.

that the claim accrued and that the statute of limitations began to run when the termination became effective. *Id.* at 628.[7] The Defendant argues that *Marquis* is distinguishable, because it merely stands for the proposition that a claim under the FADDCA accrues on the effective date of the termination, when the defendant's decision to terminate does not become final until that day. *See Id.* (noting that the existence of corporate termination review mechanisms belied the defendant's contention that the termination decision communicated in the notice of termination was irreversible). If the Defendant's interpretation of *Marquis* is correct, then that decision would not support SMLM's position that the statute of limitations began to run on the date that the termination became effective, since there is no evidence before the Court that the Defendant's decision to terminate the dealership was anything but final when it sent the notice of termination. However, *Marquis* could be read more broadly, to support the position that a dealer claim does not accrue until it begins to suffer the harm as a result of being terminated, which does not occur until the date that manufacturer's decision to terminate becomes effective. *See Id.*

(noting that there was no evidence that the plaintiff's rights under its dealership agreement had been diminished until the effective date of the termination). Even if that case can be so read, this Court believes that the precedential value of *Marquis* has been diminished by subsequent decisions by the Supreme Court, addressing the issue of accrual of federal claims under other federal statutes. This Court now turns to those decisions.

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the plaintiff alleged that he had been denied tenure, because of his national origin in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. When he was notified that he would not receive tenure, the plaintiff was also given a one-year "terminal" contract. Before the Supreme Court, the issue was whether the plaintiff's claims were barred by the statutes of limitations, because they had accrued when he was denied tenure, rather than when his employment had ended. The Supreme Court concluded that the plaintiff's claim accrued on the date upon which the allegedly unlawful act had oc-

7. The Defendant has cited other cases which can be distinguished from the present litigation. Therefore, those decisions do not support the proposition that SMLM's claim under the FADDCA accrued when it received notice of the termination. For instance, in *Emich Motors Corp. v. General Motors Corp.*, 229 F.2d 714 (7th Cir.1956), the plaintiff received notice, in April 1936, that its dealership was terminated, to become effective three months thereafter. The Seventh Circuit concluded that the plaintiff's claim under the FADDCA accrued when it received the notice, because under the dealership agreement between the parties, the plaintiff's right to receive new cars ended when it received the notice of termination. The date of injury was thus coterminous with the date of termination. Herein, there is no indication that SMLM's right to receive new cars ended on March 19, 1992, when it received the notice of termination. In *Hanley v. Chrysler Motors Corp.*, 433 F.2d 708 (10th Cir.1970), the plaintiff alleged that the defendant had violated the FADDCA, both by its conduct when the dealership was in existence and by its actions in

terminating same. The Tenth Circuit noted that the federal statute prohibited a manufacturer from acting in bad faith while a dealership is in existence and by terminating it. That court concluded that the plaintiff's claims arising out of the bad faith conduct, allegedly occurring while the dealership was in existence, accrued when that conduct occurred, rather than when the dealership was terminated. In *Pearson v. Ford Motor Co.*, 865 F.Supp. 1504 (N.D.Fla.1994), *affirmed on other grounds*, 68 F.3d 1301 (11th Cir.1995), the District Court followed *Hanley* and, thus, reached the same conclusion under analogous facts. Herein, if SMLM's claim under the federal statute had been based upon allegations that the Defendant had acted in bad faith before terminating the dealership, those decisions would support the argument that such a claim accrued prior to the date that termination became effective. However, those decisions do not stand for the proposition that a claim arising out of the termination of a dealership arises when notice of same is received.

curred (i.e., when he was denied tenure), rather than on the date that he had felt the consequences of that act (i.e., when his employment ended). *Id.* at 258, 101 S.Ct. 498. In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Supreme Court extended *Ricks* in a case that is analogous to this litigation. Therein,. the plaintiffs, administrators in the Puerto Rico Department of Education, challenged the termination of their employment in an action under 42 U.S.C. § 1983, alleging that their termination had been politically motivated in violation of their rights under the First Amendment. The plaintiffs had been notified by letter of their impending termination on dates ranging from two weeks to two months prior to their last day of employment. On filing the action after termination, the employees contended that their claims had accrued and, thus, that the statute of limitations began to run on the date of their termination from employment, rather than on the date on which they were notified of their impending termination. On the basis of *Ricks*, the Supreme Court rejected their contention, holding that their claims accrued and, therefore, the statute of limitations began to run when they were notified of their impending termination.[8] *See also, Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir.1987).

■ Applying *Ricks* and *Chardon* to the facts of this case, this Court concludes that SMLM's claim under the FADDCA accrued when it received notice of the termination, rather than upon the date that said termination became effective. SMLM contends that the Defendant violated the federal statute by terminating it as a dealer of Defendant's vehicles. That is the unlawful event of which SMLM complains, and it knew or should have known of that unlawful event when it received notice of same on March 19, 1992, more than three years before initiating this litigation. The fact that the termination did not become effective until a later date merely postponed the time at which SMLM felt the consequences of that allegedly unlawful act. In accordance with *Ricks*, SMLM's claim did not accrue on that later date.

In sum, this Court concludes that SMLM's claim under the FADDCA accrued when it received notice from Defendant, on March 19, 1992, that the dealership was terminated. Since that event occurred more than three years before this litigation was initiated, SMLM's claim under the federal statute is barred by statute of limitations, 15 U.S.C. § 1223. Accordingly, the Court sustains the Defendant's Motion for Judgment on the Pleadings or for Summary Judgment (Doc. # 102), treated solely as a motion for summary judgment, as it relates to SMLM's claim under the FADDCA.[9]

As a result of this Decision and other Decisions entered by this Court, SMLM claims under the Ohio statute and for breach of contract remain viable.[10]

---

8. Although state statutes of limitations apply to § 1983 actions, federal law determines when those claims accrue. *Collyer*, 98 F.3d at 220.

9. Parenthetically, it is unlikely that this Court's conclusion in that regard will have any impact upon SMLM's possible recovery in this litigation, since its claim under the OMVDA remains viable. The Ohio statute prohibits a manufacturer from terminating a dealership without good cause. *See* Ohio Rev.Code § 4517.54(A). The federal statute provides a cause of action for a dealer, when its franchise has been terminated for any reason other than one for good faith (i.e., when the manufacturer has acted in bad faith to terminate the dealership). 15 U.S.C. § 1222. It is inconceivable that a manufacturer could have good cause to terminate a dealership, yet act other than in bad faith.

10. This Court has previously granted summary judgment to the Defendant on the claims of Plaintiffs Mark and Patsy Stevens. *See* Doc. # 69.